7683H/RAG/cbk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN CASUALTY INSURANCE COMPANY, a Rhode Island Corporation, <br><br> Plaintiff, <br><br> v. <br><br> RUSSELL PALERMO, individually, and d/b/a PALERMO INSURANCE AGENCY and WORLDWIDE INSURANCE NETWORK INC., a North Carolina corporation, <br><br> Defendants. | Case No.: <br><br> FILED: FEBRUARY 19, 2009 <br> 09CV1074 <br> JUDGE GETTLEMAN <br> MAGISTRATE JUDGE COX <br> BR |

## COMPLAINT

NOW COMES the Plaintiff, METROPOLITAN CASUALTY INSURANCE COMPANY, a Rhode Island corporation by and through its attorney, Raymon A Grossman, of Raymon A Grossman & Associates, P.C., and for its Complaint against the Defendants, RUSSELL PALERMO, individually, and d/b/a PALERMO INSURANCE AGENCY and WORLDWIDE INSURANCE NETWORK INC., a North Carolina Corporation, states as follows:

### INTRODUCTION
### The Parties

1. Plaintiff METROPOLITAN CASUALTY INSURANCE COMPANY, a Rhode Island corporation, hereinafter referred to as MetCas, is an insurance company licensed to do business in the State of Illinois and a wholly owned subsidiary of Metropolitan Property and Casualty Insurance Company, an Illinois corporation, hereinafter referred to as Met P&C.

2. Defendant RUSSELL PALERMO, hereinafter referred to as PALERMO, at all times complained of in this Complaint and at all times relevant hereto, was doing business

through PALERMO INSURANCE AGENCY as an insurance salesman and selling insurance for various companies, including for MetCas, through an agreement he had with Defendant, WORLDWIDE INSURANCE NETWORK INC., who entered into an Independent Agency Agreement with Met P&C to write insurance for Met P&C.

3.  Defendant, WORLDWIDE INSURANCE NETWORK INC., also known as and hereinafter referred to as Smart Choice, had an Independent Agency Agreement with Met P&C, a copy of which is attached hereto as Exhibit A, and had an Agreement with PALERMO under which PALERMO could write insurance for Met P&C and MetCas in accordance with the written Agreement that Smart Choice had with METLIFE and under which the insurance policy and insurance coverage, which are the subject of this action, were obtained.

### Jurisdiction

4.  Jurisdiction is proper pursuant to 28 U.S.C. §1332 because of the above noted diversity of citizenship between Plaintiff, an Illinois corporation, Defendant Smart Choice, a North Carolina corporation, and the amount in controversy, which is over Seventy-eight Thousand Three Hundred Ninety-seven Dollars and Seventy-three cents ($78,397.73).

### Venue

5.  Venue is proper in this district pursuant to §1319(a)(2) in that all the events giving rise to this claim occurred in the Northern District of Illinois.

### Facts

6.  On or about February 28, 2007, METCAS issued a homeowners policy of insurance covering the dwelling, private structures and personal property of Jason P. Sierpien and his wife, Amy S. Sierpien, for their property located at 911 North Il Route 23, Marengo, Illinois, and said policy was renewed, effective February 28, 2008 through February 27, 2009. A copy of that policy is attached hereto as Exhibit B.

7. Said coverage was initially obtained after the Sierpiens had a large barn built onto their property in 2005 and their insurance company at the time, American Family Insurance Company, advised that they would now have to get a "farm/ranch policy."

8. The American Family agent provided a quote for premiums, which the Sierpiens thought was high.

9. The Sierpiens consulted with other insurance agencies including the Palermo Insurance Agency and Russell Palermo.

10. The Sierpiens had previously used Mr. Palermo to provide insurance for Mr. Sierpien's pump truck liability coverage and he also provided insurance for Mrs. Sierpien's horse shoeing business.

11. While applying for this insurance, Palermo clearly knew how the new structure was being used as he wanted to raised the limit of coverage based on the build out of the barn, which included four stalls and several other rooms for animals.

12. The coverage was written based on application information which was provided electronically by Palermo to METCAS, which, when opened electronically and printed out, discloses the information shown on the forms attached hereto as Exhibit C.

13. The Sierpiens never saw the information that was submitted, in which Mr. Palermo intentionally included numerous clear misrepresentations, including his answers of "No" to the following questions:

    A. Commercial structure within 40 feet?

    B. Is there a pool on the premises?

    C. Is the residence located on a farm?

    D. Any business conducted on premises?

    E. Are there any animals on premises?

14. The answers to all five of those questions were not provided by the Sierpiens and were clearly and intentionally fraudulent, as:

   A. The new building was primarily used for commercial purposes, including the primary business of the family, which was called "A Zoo to You" and a secondary horse shoeing business, which Mrs. Sierpien ran out of the same building.

   B. There clearly was a pool on the premises.

   C. The premises were located on a farm, and the Sierpiens raised animals and grew crops on the property.

   D. Business was clearly conducted on the premises, as Ms. Sierpien did her horse shoeing business, and all of the animals, equipment, and materials used in the "A Zoo to You" business were stored in the large barn.

   E. There were clearly animals on the premises, and Mr. Palermo was aware of those animals, because he was aware of the "A Zoo to You" business, and he knew that Mrs. Sierpien conducted a horse shoeing business on the premises. He provided a separate insurance policy for that business.

15. After receiving the application, the coverage was written, effective February 28, 2007 and renewed effective February 28, 2008.

16. On March 10, 2008 a fire destroyed the large barn on the premises and after investigating the claim, even though the application for the insurance contained numerous misrepresentations, MetCas honored the claim because it did not appear that it's insureds, Mr. and Mrs. Sierpien, were responsible for any of the misrepresentations on the application.

17. MetCas, furthermore, determined that had the actual use of the property been truthfully described in the application, no coverage would have been written.

18. Palermo also fraudulently reported, during the course of the investigation of the claim, that he discussed the use of the barn with MetCas underwriting employee Amy Pfeiffer and that Amy said that it was all right to provide coverage for the barn. No such conversation ever took place, and Amy Pfeiffer had no knowledge of the actual use of the barn until after the loss.

19. As a result of the representations made in the application by PALERMO, METCAS made the following payments in the following amounts on the following days to the Sierpiens:

A. $77,397.73   5/29/08

B. 1,000.00   6/2/08

Total: $78,397.73

20. Said payments were all made in accordance with the terms of the policy.

21. In addition to the payments under the policy, MetCas incurred the following expenses relating to the handling of this claim:

A. $3,597.25   Agosti and Asso. Origin and Cause investigation

B. 247.50   Marcy Feinberg Court reporter for examination under oath

C. 1,736.82   Hanson & Asso.

D. 2,570.97   Raymon A Grossman & Asso., P.C. for attorneys fees

Total: $8,152.54

22. Copies of the checks reflecting the six payments are attached hereto as Group Exhibit D.

## Count I

### Breach of Contract -- Palermo

1-22. Plaintiff restates and realleges paragraphs 1 through 22 of the INTRODUCTION

portion of this Complaint as paragraphs 1 through 22 of Count I.

23   PALERMO wrote this insurance through the INDEPENDENT AGENCY AGREEMENT entered into between Met P&C and Smart Choice, attached hereto as Exhibit A, dated 11/15/02 and which included the following provisions:

Page 1

   2. The Parties

      b)   The **Agent**... All references to "the **Agent**" herein shall mean and include the **Agent** identified herein *and its applicable employees and representatives.* [emphasis added]

Page 2

   5. Responsibilities of Agent:

      (a) The Agent agrees to comply with all laws affecting its operation, and this Agreement shall apply in only those states where the Agent maintains its qualifications for licensing, and remains licensed, by appropriate authorities, and remains appointed by the Company. ...

      c) The Company may from time to time prescribe instructions, rules and requirements respecting the conduct of its business covered hereby to ensure that applications submitted by the Agent conform to the Company's method of doing business and the Agent is responsible for and hereby agrees to comply with all such instructions, rules and requirements.

   6.   a)  The Agent shall have no authority to change, omit, add to, or waive any questions, statement or answer on any application, ...

Page 3

   7.   Business Procedures:

      a) Unless specifically agreed otherwise, in writing, by the **Company** and the **Agent**... the following procedure will apply:

      i) The completed application together with initial down payment, as applicable, (without deduction of commission) shall be submitted to the **Company** in accordance with the policies and procedures of the **Company**.

iii) Unless agreed otherwise by the **Agent** and the **Company**, all applications, including down payments, and all other materials required by law and/or by the **Company** to effectuate, select, elect, reject or change coverage(s) with the **Company**, shall be submitted to the **Company** by the **agent** within five (5) business days of receipt by the **agent**.

b) The **Agent** shall keep full and accurate records of the business transacted by the **Agent** under this Agreement and shall make the **Agent's** records relating to **Company** business, ...available to the **Company** for inspection and audit. ... . The parties agree that the **Company** may review, inspect and audit the records so maintained by the **Agent** in person and at an office of the **Agent** during ordinary business hours or as such place as the **Company** elects....

c) In addition, the **Agent** and the **Company** agree to the following business procedures:

i) The **Agent** will retain complete and accurate records of the information contained in the original application and documentation of any subsequent changes.

Page 7

15. Indemnification:

The **Company** will defend, indemnify, and hold the **agent** harmless from and against any and all claims, causes of action, damages, costs, expenses and liability, including defense costs, which are imposed on the **Agent** by law for damages caused by the acts or omissions of the **Company**, ... .

24. PALERMO breached the Agency Agreement in the following ways:

A. This contract applies clearly to PALERMO and PALERMO INSURANCE AGENCY as paragraph 2 b) states that all references to "The **Agent**" "shall mean and include the **Agent**... and...representatives." PALERMO was subject to an **ORDER OF REVOCATION** issued by the State of Illinois Secretary of State Security Department and dated June 26, 2006, a copy of which is attached hereto as Exhibit E. Despite this Order, PALERMO continued to represent the Sierpiens in the renewal of their policy.

B. He breached section 5 a) of the Agreement, which states that Agent agrees

to comply with all laws affecting its operation, and this Agreement shall apply in only those states where the Agent maintains its qualifications for licensing, and remains licensed, by appropriate authorities. PALERMO was the subject of an ORDER OF REVOCATION.

    C.    HE BREACHED SECTION 5c, which states that the **Agent** is responsible for complying with all instructions from the **Company** with regard to requirements that applications are submitted properly. PALERMO substantially misrepresented the information on the application.

    D.    Paragraph 6 a) states that: "The **Agent** shall have no authority to change, omit, add to, or waive any questions, statement or answer on any application, ....." PALERMO falsified the answers to questions on the application, in essence making a mockery of this provision, as he added on his own answers in order to obtain the coverage and get the premium dollar.

    E.    PALERMO clearly breached paragraph 7. a) of the Agreement by submitting false information, not in accordance with the policy and procedures of the **Company**.

    F.    PALERMO breached paragraph 7. b) by refusing to allow an inspection and audit of its documentation or to forward the documentation.

WHEREFORE, Plaintiff, METROPOLITAN CASUALTY INSURANCE COMPANY respectfully requests that this Court find in its favor and enter a judgment against the Defendant,

RUSSELL PALERMO, individually, and doing business as PALERMO INSURANCE AGENCY in the following sums:

    A.    $78,397.73.

    B.    Expenses in the amount of $8,152.54

    C.    Prejudgment interest at the rate of 5% on the sums paid commencing on May 29, 2008.

    D.    Costs

### Count II

### Common Law Fraud – Palermo

Plaintiff restates and realleges paragraphs 1 through 22 of the INTRODUCTION portion of this Complaint as paragraphs 1 through 22 of Count II.

23. In reliance and as a result the representations made by PALERMO in the application, a copy of which is attached hereto as Exhibit D, MetCas made payments to its insureds, Jason and Amy Sierpien, totaling $78,397.73 and incurred substantial expenses in the investigation of the claim totaling $8,152.54.

24. Palermo committed the aforesaid wrongful conduct intentionally and willfully.

25. As a result of the foregoing, the Defendant, RUSSELL PALERMO is liable to the Plaintiff, METLIFE, for punitive damages.

WHEREFORE, Plaintiff METROPOLITAN CASUALTY INSURANCE COMPANY respectfully requests that this Court find in its favor and enter a judgment against the Defendant, RUSSELL PALERMO in the following sums:

    A.    $78,397.73.

    B.    Expenses in the amount of $8,152.54

C.  Prejudgment interest at the rate of 5% on the sums paid commencing on May 29, 2008.

D.  Punitive damages in the amount of $100,000.00 or a sum to be determined by this Court.

E.  Costs

## Count III

### Breach of Contract – Smart Choice

1-24.  Plaintiff states and realleges paragraphs 1 through 24 of Count I of this Complaint as paragraphs 1 through 24 of Count III.

25.  All of the actions taken by PALERMO as set forth above were performed while operating under the terms of the contract between Met P&C and Smart Choice, on behalf of Smart Choice, with PALERMO acting as the representative of Smart Choice.

26.  In reliance and as a result the representations made by PALERMO in the Application, a copy of which is attached hereto as Exhibit D, MetCas made payments to its insureds, Jason and Amy Sierpien, totaling $78,397.73 and incurred substantial expenses in the investigation of the claim totaling $8,152.54.

27.  Russell Palermo, acting on behalf of SMART CHOICE and as its agent, committed the aforesaid wrongful conduct intentionally and willfully.

WHEREFORE, Plaintiff, METROPOLITAN CASUALTY INSURANCE COMPANY respectfully requests that this Court find in its favor and enter a judgment against the Defendant, WORLDWIDE INSURANCE NETWORK, INC., a North Carolina Corporation, in the following sums:

A.  $78,397.73.

B.  Expenses in the amount of $8,152.54

  C. Prejudgment interest at the rate of 5% on the sums paid commencing on May 29, 2008.

  D. Costs

        Respectfully submitted,

        RAYMON A GROSSMAN & ASSOCIATES, P.C.

      By: _____
        Raymon A Grossman

RAYMON A GROSSMAN & ASSOCIATES, P.C.
7101 North Cicero Avenue, Suite 110
Lincolnwood, IL  60712-2112
847/675-9091
ARDC No. 1072404